# EXHIBIT 1

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement (the "Agreement"), by and between Northside Hospital, Inc. (the "Company") and Garry Ross ("Ross") (collectively referred to as the "Parties"), is entered into and effective as of October ___, 2021 (the "Effective Date").

WHEREAS, Ross is a former employee of the Company and alleges the Company failed to pay him certain wages due under the Fair Labor Standards Act ("FLSA");

WHEREAS, on June 21, 2021, Ross filed a lawsuit against the Company in the United States District Court for the Northern District of Georgia, Civil Action Number 1:21-CV-2498-AT, alleging the Company failed to pay him certain wages due under the FLSA (the "Lawsuit");

WHEREAS, the Company denies any liability whatsoever, but desires to fully and finally compromise and settle any and all claims Ross has or claims to have against the Company;

WHEREAS, Ross desires to compromise, settle, and fully release any and all claims whatsoever which Ross may have or claims to have against the Company, up to and including the day Ross signs this Agreement;

WHEREAS, the Company will provide Ross with the Consideration set forth below in exchange for Ross's release of the Company as set forth below and Ross's execution of, and compliance with, this Agreement.

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree:

1. <u>Consideration</u>. Within fifteen (15) business days of a court's order approving this settlement agreement, Ross's execution of this Agreement and the Company's receipt of the W-9 forms from Ross and Ross's counsel, the Company[1] shall pay or cause to be paid the Settlement Payment, which shall be disbursed as follows:

   A. <u>GARRY ROSS</u>: (1) Three Thousand Five Hundred Dollars and No Cents ($3,500), minus applicable withholding or deductions, in satisfaction of his claims for unpaid wages. This amount will be treated as wages earned, and the Company will issue the appropriate W-2 form to Garry Ross for this amount in accordance with state and federal law and the regulations of the Internal Revenue Service; and (2) Three Thousand Five Hundred Dollars and No Cents ($3,500), in satisfaction of his claim for liquidated damages. The Company will issue an IRS form 1099-MISC to Garry Ross for the non-wage amount in accordance with state and federal law and the regulations of the Internal Revenue Service.

   B. <u>THE KIRBY G. SMITH LAW FIRM</u>: Three Thousand Dollars and No Cents ($3,000.00) (check made payable to "The Kirby G. Smith Law Firm") in satisfaction of any claim by Ross and/or his attorneys against the Company for an award of attorneys' fees and costs. The Company will issue an IRS form 1099-MISC to The Kirby G. Smith Law Firm and Ross, for this amount in accordance with state and federal law and the regulations of the Internal Revenue Service.

The Company's obligation to provide the Consideration set forth above shall terminate immediately if Ross breaches this Agreement.

The Consideration set forth above is not and shall not be deemed by the Company to constitute an addition to, a modification of, or a change in any previously credited hours of service, compensation, and/or wages under any employee benefit plan

---

[1] For purposes of Sections 1, 2, 3, 4, 5, 6, and 7 the term "Company" includes the Company, the Company's parents, subsidiaries, affiliates and all related companies, as well as each of their respective current and former officers, directors, shareholders, members, managers, employees, agents and any other representatives, any employee benefits plan of the Company, and any fiduciary of those plans.

Page **1** of **4**

_____
Initials
4832-1868-2877.4

or employment policy of the Company. Any such payment to Ross shall not be considered by the Company to form the basis for additional contributions to, additional benefits under, or any other additional entitlements under any employee benefit plan or employment policy of the Company or any of its present or former parent corporations or affiliates or any jointly trusted benefit plans. The Company retains the right to modify and/or amend the language of its employee benefit plans and employment policies and to seek to have modified and/or amended the language of any jointly administered benefit plans, to make clear that any amounts paid as a result of this Agreement are not considered by the Company as compensation or wages or payments for "hours worked" as defined by the applicable plans and policies and that no additional contributions or benefits will be provided by the Company by reason of the Consideration set forth above.

      2.      <u>Release</u>. In exchange for the Consideration set forth above, Ross releases and discharges the Company[1] from any and all claims or liability, whether known or unknown, arising out of any event, act or omission occurring on or before the day Ross signs this Agreement, including, but not limited to, claims arising out of Ross's employment or the cessation of Ross's employment, claims arising out of the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461, claims for breach of contract, tort, negligent hiring, negligent training, negligent supervision, negligent retention, employment discrimination, retaliation, or harassment, as well as any other statutory or common law claims, at law or in equity, recognized under any federal, state, or local law. Ross also releases any claims for unpaid back pay, sick pay, vacation pay, expenses, bonuses, claims arising out of or relating to equity or other ownership interest in the Company, claims to commissions, attorneys' fees, or any other compensation. Ross agrees that Ross is not entitled to any additional payment or benefits from the Company, except as set forth in this Agreement. Ross further agrees that Ross has suffered no harassment, retaliation, employment discrimination, or work-related injury or illness. Ross acknowledges and represents that Ross has been fully paid (including, but not limited to, any overtime to which Ross is entitled, if any) for hours Ross worked for the Company. Notwithstanding the foregoing, the release of claims set forth above does not waive Ross's right to receive benefits under the Company's 401(k) or pension plans, if any, that either (a) have accrued or vested prior to Ross's last day of employment with the Company, or (b) are intended, under the terms of such plans, to survive Ross's separation from the Company.

As a result of the foregoing release, Ross agrees that neither Ross nor any agent acting on Ross's behalf shall commence any complaint, lawsuit, or proceeding against the Company in any court on the basis of any claims within the scope of this release. Ross further understands and agrees that this release includes all claims, including attorneys' fees, that Ross ever had, now has, or may have on the day Ross signs this Agreement, whether or not the claim was previously asserted or brought before any other federal or state court or governmental agency.

      3.      <u>ADEA/OWBPA Waiver</u>. By agreeing to this provision, Ross releases and waives any right or claim against the Company[1] arising out of Ross's employment or the termination of Ross's employment with the Company under the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 et seq. ("ADEA"), the Older Workers Benefit Protection Act, 29 U.S.C. § 621 et seq. ("OWBPA"), and the Georgia Prohibition of Age Discrimination in Employment, O.C.G.A. § 34-1-2 (such release and waiver referred to as the "Waiver"). Ross understands and agrees that, (i) this Agreement is written in a manner that Ross understands; (ii) Ross does not release or waive rights or claims that may arise after Ross signs this Agreement; (iii) Ross waives rights and claims Ross may have had under the OWBPA and the ADEA, but only in exchange for payments and/or benefits in addition to anything of value to which Ross is already entitled; (iv) Ross is advised to consult with an attorney before signing this Agreement; (v) Ross has twenty-one (21) calendar days from receipt of this Agreement to consider whether to sign it (the "Offer Period"). The Parties agree that the Company may revoke this offer at any time. However, if Ross signs before the end of the Offer Period, Ross acknowledges that Ross's decision to do so was knowing, voluntary, and not induced by fraud, misrepresentation, or a threat to withdraw, alter, or provide different terms prior to the expiration of the Offer Period. Ross agrees that changes or revisions to this Agreement, whether material or immaterial, do not restart the running of the Offer Period; (vi) Ross has seven (7) calendar days after signing this Agreement to revoke this Agreement (the "Revocation Period"). If Ross revokes, the Agreement shall not be effective or enforceable and Ross shall not be entitled to the consideration set forth in this Agreement. To be effective, the revocation must be in writing and received by the Company's attorney, Brian M. Harris, at Baker Hostetler, LLP, 1170 Peachtree Street, Suite 2400, Atlanta, Georgia, 30309, prior to expiration of the Revocation Period; and (vii) this Waiver shall not become effective or enforceable until the Revocation Period has expired.

_____
Initials
4832-1868-2877.4

4. <u>Acknowledgement</u>. Ross acknowledges and agrees that Ross has received all payments of wages, employment benefits, or other compensation due to Ross from the Company[1] for the period between April 4, 2016 and April 21, 2021 (the "Applicable Time Period"). Such compensation includes payment of the gross amount of back wages equal to Three Thousand Five Hundred Dollars and No Cents ($3,500.00) pursuant to this Agreement. This payment was calculated by the Company and approved by Ross. This payment may be required by the Fair Labor Standards Act ("FLSA"). Ross's acceptance of this payment of wages and other compensation that may be due under the FLSA means that Ross has given up Ross's right to bring suit against the Company on Ross's own behalf for payment of such unpaid minimum wages or unpaid overtime compensation for the Applicable Time Period, liquidated damages, and attorney's fees under section 16(b) of the FLSA.

The Parties acknowledge and agree that this Agreement fully and finally resolves a bona fide dispute between them, including the number of hours worked, whether Ross is due additional compensation under the FLSA and, if so, the amount due. Ross expressly represents, acknowledges and agrees that he is represented by counsel, has been fully advised by an attorney of his choosing as to his rights under the FLSA with respect to his disputed claims, and that the waiver and release of rights under the FLSA is enforceable in these circumstances, that he has been advised by counsel that such waiver and release of rights is final, and that the payment offered and provided hereunder is a fair, equitable and enforceable resolution of all claims, including all claims arising out of or relating to the FLSA.

5. <u>No Admission of Liability</u>. This Agreement is not an admission of liability by the Company.[1] The Company denies any liability whatsoever. The Company enters into this Agreement to reach a mutual agreement to compromise a disputed claim.

6. <u>Non-Disparagement</u>. Ross shall not make any disparaging or defamatory statements, whether written or oral, regarding the Company.[1]

7. <u>No Future Employment</u>. Ross agrees that he shall not apply for and shall never become employed by the Company.[1] Ross understands and agrees that if Ross ever were to become employed by the Company, Ross shall immediately be required to resign such employment and agrees that the hiring entity shall not have any liability for such required resignation. To enforce this promise, Ross agrees that he will not dispute, via a grievance process, lawsuit or other dispute resolution procedure, any decision by the Company not to rehire or to terminate him. Provided, however, that this prohibition shall not affect Ross's right to become employed and/or remain employed with entities not currently owned by the Company or that are acquired by the Company through merger, acquisition, or otherwise after Ross begins employment with such entity.

8. <u>Neutral Reference</u>. In response to inquiries concerning Ross's employment, the Company shall only disclose Ross's dates of employment and job titles. Ross must direct all such reference requests to the Company's Vice President, Human Resources.

9. <u>Entire Agreement</u>. This Agreement constitutes the entire agreement between the Parties. This Agreement supersedes any prior communications, agreements, or understandings, whether oral or written, between the Parties arising out of or relating to the subject matter of this Agreement. Other than this Agreement, no other representation, promise, or agreement has been made with Ross to cause Ross to sign this Agreement. This Agreement may not be amended or modified except in writing signed by all Parties.

10. <u>Attorneys' Fees</u>. In the event of litigation relating to this Agreement other than a challenge to the Waiver, the Company shall, if it is the prevailing party, be entitled to recover reasonable attorneys' fees and costs of litigation, in addition to all other remedies available at law or in equity.

11. <u>Successors and Assigns</u>. This Agreement shall be assignable to, and shall inure to the benefit of, the successors and assigns of the Company, including, without limitation, successors through merger, name change, consolidation, or sale of a majority of the Company's stock or assets, and shall be binding upon Ross, and Ross's heirs and assigns.

_____
Initials
4832-1868-2877.4

12. <u>Non-Interference</u>.  Notwithstanding anything to the contrary set forth in this Agreement or in any other agreement between Ross and the Company, nothing in this Agreement or in any other agreement shall limit Ross's ability, or otherwise interfere with Ross's rights, to (a) file a charge or complaint with the Equal Employment Opportunity Commission, the National Labor Relations Board, the Occupational Safety and Health Administration, the Securities and Exchange Commission, or any other federal, state, or local governmental agency or commission (each a "Government Agency"), (b) communicate with any Government Agency or otherwise participate in any investigation or proceeding that may be conducted by any Government Agency, including providing documents or other information, without notice to the Company, (c) receive an award for information provided to any Government Agency, or (d) engage in activity specifically protected by Section 7 of the National Labor Relations Act, or any other federal or state statute or regulation.

13. <u>Governing Law/Consent to Jurisdiction</u>.  The laws of the State of Georgia shall govern this Agreement.  If Georgia's conflict of law rules would apply another state's laws, the Parties agree that Georgia law shall still govern.  The Parties agree that any and all claims arising out of or relating to this Agreement shall solely and exclusively be (i) brought in the Superior Court of Fulton County, Georgia, or (ii) brought in or removed to the United States District Court for the Northern District of Georgia, Atlanta Division.  The Parties consent to the personal jurisdiction of the courts identified above.  The Parties waive (i) any objection to jurisdiction or venue, or (ii) any defense claiming lack of jurisdiction or venue, in any action brought in such courts.

14. <u>Counterparts</u>.  The Parties acknowledge and agree that this Agreement may be executed in one or more counterparts, including facsimiles and scanned images, and it shall not be necessary that the signatures of all Parties hereto be contained on any one counterpart, and each counterpart shall constitute one and the same agreement.

15. <u>Voluntary Agreement</u>.  Ross acknowledges and agrees that Ross has been represented by independent legal counsel of Ross's own choosing experienced in employment and wage claims, including claims under the FLSA.  Ross further acknowledges that Ross's legal counsel has reviewed this Agreement, and that Ross fully understands the terms and conditions of this Agreement and agrees to be fully bound by and subject thereto.  Finally, Ross further acknowledges that Ross has carefully read the Agreement, knows and understands the terms and conditions, including its final and binding effect, and signs it voluntarily.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the Effective Date.

**Northside Hospital, Inc.**                                                **Garry Ross**

**By:**_____                                   _____

**Its:**_____                                   **Date:**_____

**Date:**_____

Page **4** of **4**

Initials
4832-1868-2877.4